IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FUNAI ELECTRIC CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. _____ |
| ) | |
| PERSONALIZED MEDIA ) | **JURY TRIAL DEMANDED** |
| COMMUNICATIONS, LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Funai Electric Co., Ltd. demands a trial by jury on all issues so triable and, for its Complaint against Defendant Personalized Media Communications, LLC, alleges as follows:

## THE PARTIES

1. Plaintiff Funai Electric Co., Ltd. ("Funai" or "Plaintiff") is a corporation organized and existing under the laws of Japan, with its principal place of business located at 7-7-1 Nakagaito, Daito city, Osaka 574-0013, Japan.

2. On information and belief, Defendant Personalized Media Communications, LLC ("PMC" or "Defendant") is a limited liability company organized and existing under the laws of the State of Texas, having its principal place of business located in Sugar Land, Texas.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over these claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States, 35 U.S.C. § 100 *et seq.,* and 28 U.S.C. §§ 1331 and 1338.

4. Defendants have demonstrated preparedness, intent, and willingness to file suit as they have followed through with respect to similar prior threats and filed patent infringement cases including one currently pending before this Court.

5. On September 23, 2013, PMC filed a complaint for patent infringement against Amazon.com, Inc. and Amazon Web Services, LLC in the co-pending case captioned *Personalized Media Communications, LLC v. Amazon.com, Inc., et al.,* Civil Action No. 1:13-cv-1608-RGA ("the Amazon Litigation"). PMC has accused the defendants in the Amazon Litigation of infringing nine (9) patents, each of which (i) claims the benefit of priority to the same patent applications as each of the Patents-in-Suit (defined below), and (ii) share numerous claim terms and overlapping subject matter.

6. On or about August 10, 2012, PMC's Vice President & General Counsel, Elisha Lawrence, provided notice of infringement of the Patents-in-Suit, stating Funai "requires a license" to the Patents-in-Suit.

7. Funai engaged in protracted efforts to resolve this matter without resort to litigation, including technical discussions that spanned a nearly three-year period. However, when Funai advised PMC of its belief that it did not infringe the Patents-in-Suit, PMC advised Funai that it was "clear that we have reached an impasse", thereby causing Funai to have a reasonable and imminent apprehension of suit.

8. There is an actual or imminent injury caused by Defendant that can be redressed by judicial relief and that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

9. There exists an actual and justiciable controversy between the parties regarding the alleged infringement, validity, and enforceability of U.S. Patent Nos. 7,747,217, 7,752,649, and 7,752,650 ("the Patents-in-Suit").

10. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400, as well as by Plaintiff's choice of forum, and the interest of justice under 28 U.S.C. § 1404(a) because this venue is the most convenient, efficient and economical venue for the parties.

11. In the Amazon Litigation, Amazon sought to transfer the case to the Western District of Washington. In its opposition before this Court, PMC argued that the case should not be transferred and that Delaware was the more appropriate venue because, *inter alia,* Delaware was a convenient forum because of the proximity of the following "critical witnesses" to this venue:

   a. John C. Harvey, PMC's chairman and first-named inventor on each of the PMC patents, lives in New York City;

   b. Kazie Metzger, PMC's Chief Executive Officer who has led PMC's licensing program since 1994, resides in New York City;

   c. James W. Cuddihy, a non-party and another named inventor of the PMC patents, also lives in New York City; and

   d. Thomas Scott, Jr., another non-party and the prosecuting attorney for the PMC patents resides in Great Falls, VA and works in Washington D.C.

12. PMC also argued to this Court that a prior Delaware suit afforded this Court a degree of familiarity and, as such, allowing the case to proceed in Delaware would provide significant benefits:

> In view of the fact that the nine patents in this litigation descend as continuations-in-part from PMC patents asserted in the Previous Case, this District's prior understanding and analysis of the related PMC patents is likely to aid this Court in

ruling on Defendants' anticipated prosecution laches summary judgment motion and in claim construction. Thus, as a matter of judicial economy and consistency, this Court should hold that this District's prior work with related PMC patents provides additional weight against transfer.

The same logic applies with even greater force in the present case given the fact that the Patents-in-Suit "descend as continuations-in-part from PMC patents asserted in the Previous Case" just as the nine patents in the Amazon Litigation.

13. PMC also argued:

[the Delaware] Court's familiarity with patent infringement cases cannot be overlooked. This District oversees hundreds of patent infringement cases annually and has experience with not only substantive patent law but also procedural nuances that arise in patent cases. Indeed, this Court has published forms for its litigants that are patent-specific (i.e. Rule 16 Scheduling Order and Sample Voir Dire). There is no question that the Court's familiarity with patent infringement cases will serve to streamline this case, resulting in an expeditious and efficient trial.

These arguments apply with equal force to the present case.

14. PMC's assertions, upon which this Court relied in denying Amazon's motion to transfer the Amazon Litigation, judicially estop PMC from denying venue is proper.

**PATENTS-IN-SUIT**

15. U.S. Patent No. 7,747,217 ("the '217 patent") entitled "Signal Processing Apparatus And Methods," was issued on June 29, 2010. A copy of the '217 Patent is attached hereto as Exhibit A.

16.     U.S. Patent No. 7,752,649 ("the '649 patent") entitled "Signal Processing Apparatus And Methods," was issued on July 6, 2010. A copy of the '649 Patent is attached hereto as Exhibit B.

17.     U.S. Patent No. 7,752,650 ("the '650 patent") entitled "Signal Processing Apparatus And Methods," was issued on July 6, 2010. A copy of the '650 Patent is attached hereto as Exhibit C.

**FIRST COUNT**

**(Declaratory Judgment of Non-Infringement of the '217 Patent)**

18.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

19.     Plaintiff has not infringed and does not infringe the asserted claims of the '217 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**SECOND COUNT**

**(Declaratory Judgment of Non-Infringement of the '649 Patent)**

20.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

21.     Plaintiff has not infringed and does not infringe the asserted claims of the '649 Patent, directly or indirectly, literally or under the doctrine of equivalents.

**THIRD COUNT**

**(Declaratory Judgment of Non-Infringement of the '650 Patent)**

22.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

23.     Plaintiff has not infringed and does not infringe the asserted claims of the '650 Patent, directly or indirectly, literally or under the doctrine of equivalents.

## FOURTH COUNT

### (Declaratory Judgment of Invalidity of the '217 Patent)

24.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

25.     The asserted claims of the '217 Patent are invalid for failing to satisfy the conditions of patentability set forth in the provisions of the patent laws, 35 U.S.C. § 100 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## FIFTH COUNT

### (Declaratory Judgment of Invalidity of the '649 Patent)

26.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

27.     The asserted claims of the '649 Patent are invalid for failing to satisfy the conditions of patentability set forth in the provisions of the patent laws, 35 U.S.C. § 100 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## SIXTH COUNT

### (Declaratory Judgment of Invalidity of the '650 Patent)

28.     Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

29. The asserted claims of the '650 Patent are invalid for failing to satisfy the conditions of patentability set forth in the provisions of the patent laws, 35 U.S.C. § 100 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## SEVENTH COUNT

**(Declaratory Judgment of Unenforceability of the Patents-in-Suit)**

30. Plaintiff repeats and repleads each of the allegations contained above as if fully set forth at length herein.

31. The Patents-In-Suit are unenforceable under the doctrine of prosecution laches. PMC willfully and intentionally postponed obtaining its patent rights by causing unreasonable and unexplained delays during the prosecution of the Patents-In-Suit before the United States Patent and Trademark Office.

32. In 1981, the named inventors of the Patents-in-Suit caused to be filed U.S. Patent Application Serial No. 06/317,510 ("the '510 Application"). The '510 Application consisted of a 43-page specification.

33. In 1987, the names inventors of the Patents-in-Suit caused to be filed a continuation-in-part application (Serial No. 06/829,531; "the CIP Application"), which claimed the benefit of priority to the '510 Application under 35 U.S.C. § 120. The CIP Application consisted of a new 557-page specification, which entirely replaced the original specification. The CIP Application added, *inter alia*, previously undisclosed subject matter that clearly constitutes new matter under 3 7 C.F.R. § 1.121.

34. The GATT changes to the U.S. Patent laws became effective on June 8, 1995.

35. On information and belief, in the weeks leading up to that date, PMC filed over 300 continuation applications, each of which had the identical specification as the CIP

7

Application, and each of which claimed the benefit of priority under 35 U.S.C. § 120 to both the CIP Application (1987) and the '510 Application (1981).

36. PMC's filings were intended to maximize the chances of extending prosecution in a manner that would result in the ability to exploit the pre-GATT 17-year-from-issue expiration term.

37. On information and belief, PMC overwhelmed the Patent Office with a vague and convoluted specification, thousands of submitted prior-art references, inconsistent definitions of claim terms (many of which never appear in the specification), and tens of thousands of overlapping claim sets.

38. In as early as 1997, the Patent Office estimated that PMC had submitted between 10,000 and 20,000 claims.

39. By overwhelming the Patent Office and causing truly extraordinary delays in the prosecution of hundreds of pre-GATT applications, PMC was able to watch for decades as new technologies and industries were developed by others, and to then draft vaguely-worded claims that it now argues cover these later-developed technologies.

40. On information and belief, PMC has obtained numerous patents with overlapping claims in its effort to exploit the pre-GATT 17-year-from-issue expiration term, currently securing approximately 50 years of patent protection.

41. On information and belief, PMC was fully cognizant of the fact that the delays in prosecution of the Patents-in-Suit was "unique in that the newly issued patents (all of which were filed prior to June 7, 1995) have priority dates of either 1981 or 1987."

42. On information and belief, PMC has improperly exploited the patent system to the public's detriment by overwhelming the Patent Office and causing it to delay issuance of hundreds of pre-GA TT applications.

43. On information and belief, PMC intentionally delayed the filing and prosecution of the Patents-In-Suit for the purpose of extending PMC's patent monopoly, as well as to provide PMC with an opportunity to expand the scope of the patents to cover both entire technologies and technological advances in existing fields made by others. In addition, PMC engaged in culpable neglect during the prosecution of the applications for the Patents-in-Suit.

44. On information and belief, PMC was cognizant of the adverse effect its delays in prosecution had on businesses that were unable to determine what was patented from what was not patented.

45. PMC's actions have prejudiced Funai. During the extended time span encompassed by PMC's delays, Funai invented, invested in, worked on, and/or used one or more of the products or services that PMC alleges are encompassed by the asserted claims of the Patents-in-Suit. PMC has taken affirmative actions to exploit the delays to the detriment of Funai.

46. PMC's delays have also harmed the public by postponing the public's right to use the subject matter disclosed and claimed in the Patents-in-Suit, which subject matter was invented by others and/or otherwise within the public domain.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests the entry of judgment in its favor and against Defendants as follows:

a) Declaring that Funai has not, and does not, infringe, directly, indirectly, literally, or under the doctrine of equivalents, any valid and enforceable claim of the Patents-In-Suit;

b) Declaring that the asserted claims of the Patents-In-Suit are invalid for failure to comply with one or more of the conditions of patentability set forth in 35 U.S.C. § 100 *et seq.*;

c) Declaring that the Patents-In-Suit are unenforceable for prosecution laches;

d) Enjoining PMC, including

   (i) any parent, subsidiary, predecessor-in-interest, and/or successor-in-interest;

   (ii) its agents, representatives and attorneys; and

   (iii) those individuals and/or entities in active concert, participation and/or privy with PMC;

from asserting the Patents-in-Suit against Funai, its subsidiaries, customers, and users with respect to Funai's products and/or activities;

e) Declaring that this action is exceptional under 35 U.S.C. § 285, and that Funai is entitled to recover its reasonable attorney fees, expenses, and costs incurred in connection with this action;

  f)  Awarding Funai any other relief to which the Court deems Funai is entitled under the totality of the circumstances.

|  |  |
|---|---|
| | */s/ John W. Shaw* |
| | John W. Shaw (No. 3362) |
| OF COUNSEL: | Jeffrey T. Castellano (No. 4837) |
| Marc R. Labgold, Ph.D. | 300 Delaware Avenue, Suite 1120 |
| NAGASHIMA & HASHIMOTO | SHAW KELLER LLP |
| 12007 Sunrise Valley Drive, Suite 110 | Wilmington, DE 19801 |
| Reston, VA 20191 | (302) 298-0700 |
| (703) 901-8860 | jshaw@shawkeller.com |
| | jcastellano@shawkeller.com |
| Dated: June 29, 2015 | *Attorneys for Plaintiff* |