# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FUNAI ELECTRIC CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-558-RGA |
| | ) | |
| PERSONALIZED MEDIA | ) | |
| COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## FUNAI ELECTRIC CO., LTD.'S ANSWERING BRIEF IN OPPOSITION TO PERSONALIZED MEDIA COMMUNICATIONS, LLC'S MOTION TO DISMISS

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
300 Delaware Avenue, Suite 1120
SHAW KELLER LLP
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Marc R. Labgold, Ph.D.
NAGASHIMA & HASHIMOTO
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
(703) 901-8860

Dated: October 13, 2015

# TABLE OF CONTENTS

Nature and Stage of the Proceedings ............................................................................. 1

Summary of Argument .................................................................................................... 1

Statement of Facts........................................................................................................... 3

    A.    PMC's Sole Business Is to Enforce a Single Family of Patents ............................ 3

    B.    PMC Voluntarily Transacts Business in Delaware ................................................. 4

    C.    Funai's Action Originates from and Is Logically Related to PMC's Prior Assertions of Its Portfolio in this State and Before this Court ................................ 6

    D.    All of the Patents-in-Suit Have a Common Origin in the Same Original Patent Application (Filed in 1981) and Continuation-in-Part Application (Filed in 1987) ...................................................................................................... 7

    E.    The Patents Asserted in PMC's Previous Actions Are Closely Related to the Patents-in-Suit ................................................................................................. 9

Argument ...................................................................................................................... 10

    A.    Funai Is Not Required to Plead Facts Supporting Personal Jurisdiction ............. 10

    B.    PMC Consented to Personal Jurisdiction by Purposefully Using the Delaware Courts ................................................................................................. 10

    C.    This Court May Assert Jurisdiction over PMC Under 10 Del. C. § 3104(c)(1) Because Funai's Claims Arise from PMC's Business Transactions in Delaware ................................................................................... 12

    D.    Exercising Jurisdiction over PMC in this Action is Consistent with the Requirements of Due Process ............................................................................. 16

    E.    It Would Be an Abuse of Discretion for the Court to Refuse to Exercise Jurisdiction over Funai's Claims Without a Well-Founded Reason to Do So ....................................................................................................................... 19

Conclusion .................................................................................................................... 20

i

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Lupin Ltd.*, C.A. No. 09-152-LPS, 2011 WL 1897322 (D. Del. May 19, 2011).......................................................................................................... 8

*ActiveVideo Networks, Inc. v. Trans Video Elec., Ltd.*, 975 F. Supp. 2d 1083 (N.D. Cal. 2013)............................................................................................................... 17

*AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971 (Fed. Cir. 2013) ........................... 19

*Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998) ............................................................................................................ 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)................................................ 16

*Cancer Research Tech., Ltd. v. Barr Labs, Inc.*, 625 F.3d 724 (Fed. Cir. 2010)........... 7

*Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), *as amended on reh'g in part*, (Dec. 12, 2013) .............................................................. 20

*Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489 (D. Del. 2012) ................................................................................................. 12

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) .................. 15, 16, 19

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112 (D. Del. 2000) ..................................................................................... 10

*Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, C.A. No. 91-214-SLR, 1993 WL 669447 (D. Del. Jan. 4, 1993)....................................................... 10, 11, 12

*Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014) .............. 8

*Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476 (Del. 1992) ..................... 12

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210 (Del. 1982) ........................ 13

*Katz Interactive Call Processing*, 639 F.3d 1303 (Fed. Cir. 2011) ............................ 13

*Kyocera Commc'ns, Inc. v. Potter Voice Tech., LLC*, No. 13-CV-0766-H BGS, 2013 WL 2456032 (S.D. Cal. June 5, 2013).............................................................. 17

*LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764 (Del. 1986) ........................... 12, 14

*Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377 (D. Del. 2012)................................. 10

*Marron v. Whitney Grp.*, 662 F. Supp. 2d 198 (D. Mass. 2009) ................................................... 12

*Matthew v. Flakt Woods Grp. SA*, 56 A.3d 1023 (Del. 2012) ................................................ 12, 13

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ........................................................... 14

*Microsoft Corp. v. Amphus, Inc.*, C.A. No. 8092-VCP, 2013 WL 5899003 (Del.
   Ch. June 27, 2013) .................................................................................................... 13, 15

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350 (Fed. Cir.
   2013) .................................................................................................................................. 15

*Pro Sports Inc. v. West*, 639 F. Supp. 2d 475 (D.N.J. 2009) ...................................................... 17

*Rockwell Tech., LLC, v. Spectra-Physics Lasers, Inc.*, C.A. No. 00-589 GMS,
   2002 WL 531555 (D. Del. Mar. 26, 2002) ................................................................... 16

*Symbol Tech. v. Lemelson Med.*, 422 F.3d 1378 (Fed. Cir. 2005) .................................................. 7

*Uribe v. Maryland Auto. Ins. Fund*, 115 A.3d 1216 (Del. 2015) .......................................... 12, 14

*Vichi v. Koninklijke Philips Elec. N.V.*, C.A. No. 2578-VCP, 2009 WL 4345724
   (Del. Ch. Dec. 1, 2009) .......................................................................................................... 15

**Statutes**

10 Del. C. § 3104 ...................................................................................................................... passim

35 U.S.C. § 101 ......................................................................................................................... passim

**Rules**

D. Del. LR 3.1 ................................................................................................................................ 14

D. Del. LR 7.1.3 ............................................................................................................................. 15

Fed. R. Civ. P. 1 ............................................................................................................................ 16

## Nature and Stage of the Proceedings

Funai Electric Co., Ltd. ("Funai") submits this answering brief in opposition to defendant Personalized Media Communications, LLC's ("PMC") motion to dismiss for lack of personal jurisdiction.  PMC does not dispute that subject matter jurisdiction exists.  Rather, after spending the last 15 years as a plaintiff in Delaware asserting patents from the same family, with the same specification, and with common ancestors as the patents at issue in this litigation, PMC now asserts it cannot be subjected to a declaratory judgment suit in this State.  But at this point, under Delaware law, PMC has implicitly consented to jurisdiction in Delaware with regard to actions involving its patents.  And beyond that, PMC's filing of its prior actions constitutes the transaction of business under the Delaware long-arm statute, and there is a clear nexus between those actions and the present action.  Indeed, PMC has just one business—litigating patents from this single patent family—and has described its prior Delaware activities as "longstanding" and "extensive."  PMC now seeks to ignore its past actions and to act as if it has never before entered this State.

Funai brought this declaratory action in Delaware because it is a neutral forum (with extensive prior experience with the same patent family) in which PMC has consented to jurisdiction and voluntarily and repeatedly transacted its business.

## Summary of Argument

1.       PMC's Motion should be denied because PMC has consented to jurisdiction in this Court, because this Court has jurisdiction to hear Funai's claims under Delaware's long-arm statute, 10 Del. C. § 3104(c), and because the exercise of jurisdiction under these circumstances is consistent with due process.  PMC has used this forum continuously over the past 15 years to enforce the same family of patents, with most of the patents *having the same specification* as the patents-in-suit, and should not now be heard to complain that it would be unfair for the Court to subject PMC to

jurisdiction to continue to litigate the same issues of validity, enforceability, and infringement that PMC itself has presented to this Court.

2.     Under Delaware law, PMC has consented to the jurisdiction of the Delaware courts by voluntarily bringing two prior actions in this forum on this same family of patents, all subject to the same prosecution laches issues, and each having the same specification and a common origin. The claims in the present action bear a distinct logical relationship to the claims in PMC's prior actions, and the actions involve significant overlapping issues. This is sufficient to constitute consent to jurisdiction with regard to Funai's claims.

3.     Additionally, PMC is subject to specific jurisdiction under 10 Del. C. § 3104(c)(1), which permits Delaware courts to exercise jurisdiction over foreign defendants for causes of action arising from their business transactions within the state. The Delaware Supreme Court has interpreted § 3104(c)(1) to require only that the claims in the present action have a "nexus" with the defendant's actions in transacting business in the forum—in other words, that the claims have a common "origin." PMC's ***sole business*** is the enforcement of its patents to compel parties to license those patents, including the patents-in-suit. PMC has conducted that business in Delaware by bringing and litigating multiple patent infringement suits in this district and by hiring Delaware counsel to prosecute those cases. Even when PMC had the ability to enforce its patents in other jurisdictions, and even when its targets sought transfer out of this forum, PMC has aggressively defended its right to pursue its claims here.

4.     Funai's assertion of personal jurisdiction likewise is consistent with due process. Due process requires that a defendant purposefully direct its activities at the forum, and that the cause of action arises from or relates to those activities. A patentee's past choice to file suit on its patents in a particular forum, even against parties other than the plaintiff, gives rise to personal jurisdiction for a

2

declaratory judgment action because such an action "relates to" the issues of non-infringement, invalidity, and enforceability in the prior actions.  Here, PMC has twice filed suit in the District of Delaware alleging infringement of patents from the same family as the patents-in-suit.  Indeed, PMC opposed transfer in its most recent suit partly on the grounds that the prior two suits were "related" because they raised the same unenforceability issues raised by Funai.  PMC cannot now claim that the prior suits are not "related to" Funai's present declaratory judgment action.

5.     Finally, the Court does not have discretion to dismiss the complaint under the Declaratory Judgment Act.  Importantly, PMC does not dispute that jurisdiction exists under the Act. The Federal Circuit has held that if an accused infringer brings a declaratory judgment action following a direct charge of infringement such that an actual controversy exists, then it is an abuse of discretion for a district court to decline to entertain the action without well-founded reasons.  Here, PMC has provided no such reasons and Funai submits there are none.

Statement of Facts

**A.     PMC's Sole Business Is to Enforce a Single Family of Patents**

PMC's sole business is to enforce its patent portfolio, which consists of a single patent family, most of which are alleged to have dramatically extended terms.  PMC touts that it "has a renowned portfolio of patents with either 1981 or 1987 priority dates as a result of patent office delays," that "[t]he patents will not begin to expire until 2027," and that its patents are particularly broad, in that they are "platform agnostic" and "can be delivered via the Internet, intranet, cellular wireless or cable/satellite networks, and run on PCs, laptops, tablets, smartphones, set-top boxes, televisions, game consoles, and other electronic-media delivery systems."  *See* Press Release, PMC, *Personalized Media Communications President, Gerald Holtzman, Named to the List of Top IP Market Marketers by IAM Magazine* (June 19, 2014), http://www.personalizedmedia.com/pdf/

PMCtopipmarketmakers-20140618.pdf (Exh. 1); PMC, *More Information About PMC*, http://www.personalizedmedia.com/about-history-harvey.asp (last visited Oct. 13, 2015) (Exh. 2); Press Release, PMC, *Personalized Media Communications' Gerald Holtzman and Boyd Lemna are named to the 2014 "World's Leading IP Strategists"* (June 19, 2014), http://www.personalizedmedia.com/pdf/PMCiam300-20140618.pdf (Exh. 3).

PMC boasts that a central part of its business strategy was to "file a large number of patents in the USPTO before the June 8, 1995 date, thereby providing the broadest and most effective coverage for PMC's U.S. patent portfolio," in light of the change in U.S. law that limited patents first filed after June 8, 1995 to shorter terms based on the date of filing.  Exh. 2.

## B.   PMC Voluntarily Transacts Business in Delaware

PMC has filed two cases in this Court against six entities, asserting fifteen patents.  All of the patents that it has asserted here arise from the same group of 300+ applications that PMC filed in the weeks before June 8, 1995, and all of them claim priority to the same 1981 and 1987 patent applications.

First, on December 4, 2000, PMC filed suit in the District of Delaware, C.A. No. 00-1020-GMS (the "Philips Action"), against four corporations for infringement of seven patents.  (*See* Philips Action, D.I. 1 at ¶¶ 3, 32-66).[1]  PMC was at that time a Delaware entity, and remained so until 2010 (although it continued to claim that it was a Delaware entity as late as October 2012). (*Id.,* D.I. 633 at ¶ 2).  The Philips Action defendants were companies that could have been—and often are—sued throughout the United States.

---

[1]   This document is available on PACER as Exhibit 3 to D.I. 25 in C.A. No. 13-1608-RGA.

Central to the Philips Action was the defense of prosecution laches, in which the defendants asserted that PMC intentionally delayed the prosecution of its applications in order to extend the term of protection on their inventions.  (*Id.*, D.I. 265).  The parties briefed the issue, and the Court heard argument, but ultimately denied summary judgment due to the existence of disputed issues of fact.  (*Id.*, D.I. 266, 282, 290, 424 at 134-135).  PMC prosecuted this litigation for thirteen years.  It ultimately concluded in a series of stipulations of dismissal, which were submitted after the Court had ruled on summary judgment and construed some of the claim terms.  (*Id.*, D.I. 693, 750).

Less than three weeks after its first Delaware litigation ended, PMC voluntarily returned to Delaware to assert more patents from the same patent family.  This time, it entered Delaware to sue Amazon.com, Inc. ("Amazon") and Amazon Web Services LLC, in C.A. No. 13-1608-RGA (the "Amazon Action")—litigants who were once again subject to suit across the United States. (Amazon Action, D.I. 1).  This time, PMC asserted eight new patents from the PMC portfolio, along with one patent from the Philips Action.  (*Id.*).  Amazon asserted a declaratory judgment counter-claim that the patents were unenforceable due to prosecution laches.  (*Id.*, D.I. 11 at 12-13).  The Amazon Action concluded when, in response to a motion for judgment on the pleadings, the Court held that seven of the nine asserted patents were not eligible for patenting under 35 U.S.C. § 101 (the claims on the other two patents were dismissed by stipulation).  (*Id.*, D.I. 57, 86, 148, 149).

In the course of the Amazon Action, the defendants moved to transfer.  In opposing transfer, PMC described its first use of the Delaware courts as "longstanding" and "extensive."  (Amazon Action, D.I. 24 at 2).  PMC argued that its second entry into Delaware related to its first assertion of its patents in the Philips Action because both cases—like this one—involved issues of prosecution laches arising from the unprecedented history of PMC's patent portfolio.  (*Id.* at 2).  PMC stressed that the patents it chose to assert in the Amazon Action were continuations-in-part of the patents

previously asserted in Delaware, that the specifications were identical, and the claims included many of the same terms.  (*Id.* at 4, 19-20; *see also* Exh. 4 (Transcript of the March 21, 2014 hearing on the motion to transfer in the Amazon Action) at 12:21-13:24 (confirming the related nature of the patents asserted in Delaware from the PMC portfolio)).  It further argued that it chose to enter Delaware a second time to litigate its patent portfolio for "rational and legitimate reasons," (*id.* at 5), including the proximity of Delaware to its inventors and counsel (Amazon Action, D.I. 24 at 2-3, 5).

Beyond affirmatively choosing to assert these patents in this State, over the course of its 15 year Delaware litigation history, PMC also retained and paid two Delaware law firms to serve as its Delaware counsel, as reflected on the dockets of the Philips and Amazon Actions.

**C.     Funai's Action Originates from and Is Logically Related to PMC's Prior Assertions of Its Portfolio in this State and Before this Court**

In August 2012, PMC sent a notice of infringement to Funai's U.S. subsidiary, Funai Corporation, Inc., stating that it "requires a license" to patents from PMC's portfolio.  (*See* Exh. 5).  PMC and Funai then engaged in negotiations regarding PMC's assertion that Funai infringed several patents from PMC's single family patent portfolio, including among others U.S. Patent Nos. 7,747,217, 7,752,649, 7,752,650, and 7,783,252.  On September 23, 2013, while the negotiations between the Parties were ongoing, PMC filed the Amazon Action.  PMC asserted that Amazon infringed one of the same patents it claimed was infringed by Funai (U.S. Patent No. 7,783,252).

The Parties eventually reached an "impasse," giving rise to subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C.A. § 2201.  (D.I. 1 at ¶ 7).  PMC does not contest subject matter jurisdiction. Shortly thereafter, on June 29, 2015, Funai filed the instant action seeking declaratory judgment of non-infringement, invalidity, and unenforceability of three of the five patents PMC had asserted during the negotiation, each of which arise out of the same portfolio PMC had previously asserted in Delaware, with the same ancestors and the same specification.  (D.I. 1).

Like the previous actions, Funai's Complaint asserts that PMC's patents are invalid under 35 U.S.C. § 101 and unenforceable due to prosecution laches.  (D.I. 1 at ¶¶ 24-46).

**D.      All of the Patents-in-Suit Have a Common Origin in the Same Original Patent Application (Filed in 1981) and Continuation-in-Part Application (Filed in 1987)**

Each of the patents-in-suit (like all of the patents in PMC's portfolio) claim priority to the same 43-page patent application filed in 1981 as U.S. Patent Application Serial No. 06/317,510, and to the massive 557-page continuation-in-part ("CIP") of that application, filed in 1987 as U.S. Patent Application Serial No. 06/829,531.  While the patents claim priority to these early applications (***filed 34 years ago***), they were not issued until June of 2010, and as such PMC seeks to enforce them for a term of 17 years from the issue date—hence a total term ***extending over 46 years*** from the alleged date of invention.  Funai, like the Philips and Amazon defendants, alleges that PMC intentionally delayed the prosecution of the patents-in-suit in order to achieve these extended terms, thereby rendering them unenforceable under the doctrine of prosecution laches.[2]  (D.I. 1 at ¶¶ 24-46).

Specifically, all of the patents-in-suit originate from a single large group of over 300 patent applications filed in May and June of 1995, just before the change in U.S. patent laws that resulted in the term of a patent being calculated as 20 years from the earliest filed application to which the application in question claims the benefit of priority, rather than 17 years from the issue date of the patent.  (*See* D.I. 1 at ¶ 35 & Exhs. 1-3); *see also Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1217 (Fed. Cir. 2014) (Rader, C.J., dissenting).  Prior to the change in the law, because a

---

[2]      The doctrine of prosecution laches is an equitable defense that renders a patent unenforceable when it has issued after an unreasonable and unexplained delay in prosecution, depending on the totality of the circumstances.  *Cancer Research Tech., Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010); *Symbol Tech. v. Lemelson Med.,* 422 F.3d 1378, 1384-85 (Fed. Cir. 2005).  No strict time limitations have been established for determining when continued refiling of patent applications constitutes prosecution laches.  *Symbol Tech.*, 422 F.3d at 1385.

patent's term extended from its issue date, a patentee could employ various methods of delaying or extending prosecution of his or her patents at the patent office, sometimes for years, in order to extend its patents' terms. *See Gilead*, 753 F.3d at 1217 (describing one such method). Successive continuations, for example, were entitled to the priority date of the original application, and a patentee could attempt to achieve a longer term of patent protection by filing its claims as part of a continuation rather than as part of an original patent application. *Id.* At that time, U.S. patent applications were held in confidence and, as such, the public had no knowledge of these pending applications. A patentee like PMC could lay in wait, tailoring its patent's claims in an attempt to encompass newly developed technologies. The resulting "submarine" patents could surface after an entire industry had developed. In 1994, the URAA put an end to these practices by changing the term for a U.S. patent from 17 years from the issue date to 20 years from the earliest effective filing date. *Abbott Labs. v. Lupin Ltd.*, C.A. No. 09-152-LPS, 2011 WL 1897322, at *9 (D. Del. May 19, 2011). This change applied to all patent applications filed ***after*** June 8, 1995. *Id.*

Like the 300+ other applications filed by PMC in the weeks leading up to this June 8, 1995 change in the law, the three patents-in-suit and the fifteen patents asserted in PMC's prior Delaware actions share the same specification[3] and claim priority to PMC's 1981 original application and 557-page 1987 CIP application. (D.I. 1 at ¶¶ 35-38). These 300+ applications included an enormous number of claims—the patent office ***estimated*** the number of claims pending in 1997 at between 10,000 and 20,000. (*Id.*). Not surprisingly, this exceptionally large number of overlapping claims

---

[3] One exception is that two of the patents, U.S. Pat. Nos. 4,694,490 and 4,704,725, both asserted only in the Philips Action, issued on applications earlier in the chain of priority and therefore contain shorter specifications.

presented, by design, a logistical nightmare for the USPTO resulting in, again by design, extensive delays in the issuance of PMC's patents.  (*See* D.I. 1 at ¶¶ 32-44).

**E.    The Patents Asserted in PMC's Previous Actions Are Closely Related to the Patents-in-Suit**

The three patents-in-suit in this action are closely related to the fifteen patents asserted patents in the two prior cases PMC voluntarily filed in Delaware.  The following table summarizes the chronology of these PMC patents:[4]

| Patent | Filed | Asserted In | Relationship to Patents-in-Suit |
|--------|-------|-------------|--------------------------------|
| 4,694,490 | November 3, 1981 | 00-1020 | Shares claim of priority |
| 4,704,725 | February 14, 1986 | 00-1020 | Shares claim of priority |
| 4,965,825 | September 11, 1987 | 00-1020 | Shares claim of priority; same specification |
| 5,109,414 | September 25, 1990 | 00-1020 | Shares claim of priority; same specification |
| 5,233,654 | March 10, 1992 | 00-1020 | Shares claim of priority; same specification |
| 5,335,277 | May 3, 1993 | 00-1020 | Shares claim of priority; same specification |
| 7,769,170 | May 22, 1995 | 13-1608 | Filed same week; same chain of priority; same specification |
| 7,783,252 | May 23, 1995 | 13-1608 | Filed same week; same chain of priority; same specification |
| 7,801,304 | May 24, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 7,752,649 | May 24, 1995 | 15-558 | Patent-in-suit |
| 7,827,587 | June 2, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 8,046,791 | June 2, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 7,752,650 | June 2, 1995 | 15-558 | Patent-in-suit |
| 5,887,243 | June 7, 1995 | 00-1020 & 13-1608 | Filed same day; same chain of priority; same specification |
| 7,805,749 | June 7, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 7,940,931 | June 7, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 7,864,956 | June 7, 1995 | 13-1608 | Filed same day; same chain of priority; same specification |
| 7,747,217 | June 7, 1995 | 15-558 | Patent-in-suit |

---

[4]    The relationships between the patents are also reflected in the chart attached as Exhibit 6.

In addition to the fact that the majority of the patents were filed during the same short time period, all of them claim priority to the same 1981 and 1987 applications, and most of them also share identical titles, specifications (excepting minor formatting edits and similar changes), figures, assignees, and inventors as well as concentrically overlapping and similar claims.

## Argument

### A.     Funai Is Not Required to Plead Facts Supporting Personal Jurisdiction

As an initial matter, Funai is not required to plead facts in support of personal jurisdiction in its initial complaint. *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 119 (D. Del. 2000) ("A party does not need to plead facts in support of this court obtaining personal jurisdiction over an opposing party."). And in ruling on a motion to dismiss, the Court is free to rely upon matters outside of the pleadings. *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 386 (D. Del. 2012).

As a result, PMC cannot support its contention that this action should be dismissed solely because Funai did not include specific factual allegations regarding personal jurisdiction in the Complaint. (D.I. 11 at 1). PMC is, in any event, wrong on the facts—Funai did plead the facts that establish PMC previously transacted business in Delaware. (D.I. 1 at ¶¶ 5, 11-13).

### B.     PMC Consented to Personal Jurisdiction by Purposefully Using the Delaware Courts

Established precedent from this district dictates that PMC's past two patent infringement complaints constitutes consent by PMC to personal jurisdiction in the State of Delaware.

Instructive is *Foster Wheeler Energy Corp. v. Metallgesellschaft AG*, C.A. No. 91-214-SLR, 1993 WL 669447, at *4 (D. Del. Jan. 4, 1993). In that case, the plaintiff brought infringement claims against defendant MG. *Id.* at *1. MG had previously sued Foster Wheeler in Delaware on a

different set of patents owned by MG.  *Id.*  MG then challenged the jurisdiction of the court, on the theory that the new suit arose from an "independent and separate" transaction.  *Id.* at *4.  The Court disagreed, holding that the defendant's prior litigation on its own patents so clearly evidenced consent to personal jurisdiction that Judge Robinson felt no need even to analyze the defendants' contacts under the long-arm statute, 10 Del. C. § 3104(c).  *Id.*

Here, PMC's consent is even more apparent.  This is not litigation of an "independent claim" brought on entirely unrelated patents owned by a different party, as in *Foster Wheeler*.  Instead, the patents-in-suit here are from the same patent family, share the same specification, and present common issues of law and fact from PMC's own prior litigations.  Moreover, the *same* issue of patent unenforceability due to prosecution laches presented in the prior two actions is asserted in this litigation, along with essentially the same claims under 35 U.S.C. § 101 (which resulted in the related patents in the Amazon Action being held not patent eligible).  (Amazon Action, D.I. 148, 149).  If the "independent claim" in *Foster Wheeler* nonetheless had enough of a "logical relationship" to claims of patent infringement arising from unrelated patents, with a different owner, to make the defendants' consent to jurisdiction carry over to the new litigation, no less of a logical relationship can exist in this case.  Indeed, here, there are far more "significant and common issues of law and fact supported by overlapping evidence" concerning prosecution of PMC's patents (implicating claim construction and Funai's equitable defenses) and the issues of law presented with the § 101 allegations than existed in *Foster Wheeler*.[5]

---

[5]   *Foster Wheeler* has been applied where the later plaintiff was not a party to the original suit.  *See Attorneys Liab. Prot. Soc'y, Inc. v. Eisenhofer*, C.A. No. 10C-08-277 FSS, 2011 WL 2089718, at *2 (Del. Super. Apr. 29, 2011) (holding that, where the plaintiff had filed a class action suit in Delaware, the plaintiff's "actions were purposefully directed at Delaware such that he should reasonably anticipate litigating related claims . . . in a Delaware court").

PMC also has a much longer and richer history of litigation in Delaware than the defendant in *Foster Wheeler*.  PMC stated that its use of the Delaware courts was "longstanding" and "extensive" even prior to the Amazon Action, (Amazon Action, D.I. 24 at 2), and it then proceeded to prosecute its claims in Delaware on eight different patents (and one overlapping patent) in the Amazon Action for another three years.  And here, as in *Foster Wheeler*, PMC chose to sue in Delaware; it was not dragged here involuntarily.  *See Capriotti's Sandwich Shop, Inc. v. Taylor Family Holdings, Inc.*, 857 F. Supp. 2d 489, 501 (D. Del. 2012) ("[B]y filing suit in [Delaware], defendants at bar have waived jurisdictional defenses and consented to the jurisdiction of this court. Defendants 'can claim no unfairness based upon this court's exercise of jurisdiction over [them], since one who enjoys the full benefits of access to a forum's courts as plaintiff may not simultaneously claim immunity from that forum's authority as defendant.'") (quoting *Marron v. Whitney Grp.*, 662 F. Supp. 2d 198, 201 (D. Mass. 2009)).

**C.    This Court May Assert Jurisdiction over PMC Under 10 Del. C. § 3104(c)(1) Because Funai's Claims Arise from PMC's Business Transactions in Delaware**

Under 10 Del. C. § 3104(c)(1), "a court may exercise personal jurisdiction over a nonresident who, 'in person or through an agent . . . [t]ransacts any business or performs any character of work or service in the State . . . .'" *Matthew v. Flakt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012); *Uribe v. Maryland Auto. Ins. Fund*, 115 A.3d 1216, at *3 (Del. 2015) (same).  There need only be some "nexus" between the transaction of business in Delaware and the present litigation in order to satisfy the statute.  *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986); *see also Uribe*, 115 A.3d at *4 (requiring only that the present claim has its "origin" in the earlier transaction of business in Delaware).  Section 3104(c) should be interpreted to the broadest extent permitted by the Due Process Clause.  *LaNuova*, 513 A.3d at 768; *see also Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del. 1992).  "In fact, the only limit placed on § 3104 is that it

12

remain within the constraints of the Due Process Clause." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998); *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 222-25 (Del. 1982) (establishing the "conspiracy" theory of personal jurisdiction, without expressly tying the theory to the text of the long-arm statute).  The Delaware Supreme Court has the final say regarding the interpretation of § 3104.

PMC's sole business is the enforcement of its patent portfolio.  PMC has voluntarily transacted business in Delaware by enforcing its patent portfolio through filing and prosecuting the Philips and Amazon Actions.  Filing a patent infringement action in Delaware constitutes a business transaction in Delaware for the purpose of § 3104(c)(1).  *See Microsoft Corp. v. Amphus, Inc.*, C.A. No. 8092-VCP, 2013 WL 5899003, at *12 (Del. Ch. June 27, 2013) (holding that the act of filing a patent infringement lawsuit in Delaware was sufficient to satisfy § 3104(c)(1)).  Other, lesser actions likewise meet the business transaction requirement.  *See*, *e.g.*, *Matthew*, 56 A.3d at 1027-28 (holding that "[f]iling a certificate of cancellation" can satisfy § 3104(c)(1)).  There should be no dispute about whether PMC has transacted business in Delaware under § 3104(c)(1).

 The claims in this litigation likewise have more than a sufficient nexus with PMC's two Delaware litigations to sustain personal jurisdiction under the statute.  PMC, for the past fifteen years, continuously pursued patent infringement claims in Delaware to enforce the very same family of patents that are at issue here.  Each of those patents had the same title, assignees, and inventors as the patents-in-suit here, and most of them shared the same specification.[6]  And in those cases, some of the same issues were at play, including prosecution laches and § 101.  All of the patents in PMC's

---

[6]    The Federal Circuit will "ordinarily interpret claims consistently across patents having the same specification."  *In re Katz Interactive Call Processing*, 639 F.3d 1303, 1325 (Fed. Cir. 2011).

litigations in Delaware—like this litigation—arise from and claim priority to the same family of

patents, and share common ancestors all the way back to 1981.  This is more than enough to

demonstrate that the claims in the present action share a nexus with and origin in PMC's acts of

bringing its two previous actions, under the standards the Delaware Supreme Court set forth in

*LaNuova*, 513 A.2d at 768, and recently re-affirmed in *Uribe*, 115 A.3d at 1216.

Indeed, PMC itself has argued that its prior Delaware litigations were "related" because the

same prosecution laches defense was asserted in both,[7] just as it is asserted here.  (Amazon Action,

D.I. 24 at 19-20).  According to PMC, the cases were "subject matter related" such that PMC "would

have been totally justified in checking the related case box."  (Exh. 4 at 13:19-22).  PMC should not

now be heard to complain that a third action asserting the same defenses, relying upon largely the

same facts, does not "arise from" the prior two actions.

The required nexus is also demonstrated by the common origin between Funai's claims and

PMC's voluntary actions in Delaware.  PMC's actions in enforcing its patents gave rise to Funai's

claims because they form part of the basis for Funai's assertion of subject matter jurisdiction on

those claims.  Funai seeks a declaratory judgment that its products do not infringe PMC's patents,

that PMC's patents are invalid, and that PMC's patents are unenforceable due to prosecution laches.

(D.I. 1).  In order to establish subject matter jurisdiction for these claims, Funai must allege facts

that, "under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation

---

[7]   Under District of Delaware Local Rule 3.1, the related case box must be checked if, for
example, the cases "*[a]rise from* the same or substantially identical transactions, happenings, or
events," or "[i]nvolve the same or substantially the same . . . property."  (emphasis added).

omitted).  The fact that PMC has spent the past 15 years enforcing its patents in Delaware forms part of the "circumstances" that support the controversy between the parties.  *See Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013) ("[T]he question in this case is . . . whether [the declaratory judgment plaintiff has] demonstrated a 'substantial risk' that the harm will occur, which may prompt [them] to reasonably incur costs to mitigate or avoid that harm.'") (citation omitted).  *Cf. Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) ("[A declaratory judgment claim] arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit").

In its brief, PMC contends that Funai's status as a foreign company, the fact that PMC's notice letter to Funai was sent to California, and the fact that the negotiations occurred in Japan, somehow "destroys" jurisdiction under § 3104(c)(1).  (D.I. 11 at 6).  PMC's contention is not sustainable.  Section 3104(c) sets forth jurisdiction with regard to "a cause of action brought by *any person*," not a cause of action brought only by a Delaware resident.  *See, e.g.*, *Microsoft Corp.*, 2013 WL 5899003 at *10 (finding personal jurisdiction under 3014(c)(1) over Virgin Islands corporation in suit by Washington Corporation); *Vichi v. Koninklijke Philips Elec. N.V.*, C.A. No. 2578-VCP, 2009 WL 4345724, at *10 (Del. Ch. Dec. 1, 2009) (finding personal jurisdiction under 3104(c)(1) over Dutch corporation in suit by Italian individual).

Finally, even though PMC has previously touted its "longstanding" and "extensive" litigation of its patent portfolio in Delaware, and argued that it brought at least its second Delaware litigation for "rational and legitimate reasons," and even though the complaint discusses PMC's prior litigations, PMC did not address these litigations in its opening brief with regard to § 3104(c)(1).  (*See* D.I. 11 at 5-8).  PMC should not be permitted to hold back on reasonably expected arguments in its opening brief.  D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve

material for the reply brief which should have been included in the full and fair opening brief.");

*Rockwell Tech., LLC. v. Spectra-Physics Lasers, Inc.*, C.A. No. 00-589 GMS, 2002 WL 531555, at

*3 (D. Del. Mar. 26, 2002) ("Rockwell's tactic of reserving new arguments for its reply brief

amounts to impermissible 'sandbagging.'"); *see also* Fed. R. Civ. P. 1.  PMC's 15 year history of

filing and litigating cases in Delaware shows that PMC has been transacting business in Delaware

under § 3104(c)(1).

**D.**     **Exercising Jurisdiction over PMC in this Action is Consistent with the Requirements of Due Process**

   PMC next challenges this Court's jurisdiction under the requirements of due process.  (D.I.

11 at 7-13).  Under the Due Process Clause, the Court has jurisdiction over a defendant who has

"purposefully directed his activities at residents of the forum, and the litigation results from alleged

injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472 (1985) (internal quotation marks and citation omitted).  In declaratory judgment actions,

however, the Federal Circuit "ha[s] looked beyond the 'arises out of' inquiry and ha[s] found

jurisdiction where [the patentee's activities in the forum, beyond sending a notice of infringement] in

some identifiable way '***relate to***' enforcement of those patents in the forum."  *Avocent*, 552 F.3d at

1334 (emphasis added).  This is because declaratory judgment actions in patent cases "raise non-

infringement, invalidity, and/or unenforceability issues central to enforcement of the patents in

question[.]"  *Id.*  Thus, "if the defendant patentee purposefully directs activities at the forum which

relate in some material way to the enforcement . . . of the patent, those activities may suffice to

support specific jurisdiction."  *Id.* at 1336.

   As to the first requirement, PMC does not deny its enforcement actions were "purposefully

directed" at the District of Delaware.  (D.I. 11 at 10-13).  Many district courts have found personal

jurisdiction in declaratory judgment actions under similar circumstances, holding that the patentee

"purposefully directed" its conduct at the forum by enforcing its patents there.  *See, e.g.*, *Kyocera Commc'ns, Inc. v. Potter Voice Tech., LLC*, No. 13-CV-0766-H BGS, 2013 WL 2456032, at *3 (S.D. Cal. June 5, 2013) (denying motion to dismiss declaratory judgment action where defendant patentee had taken efforts to enforce its patent in the forum); *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 482 (D.N.J. 2009) (denying motion to dismiss declaratory judgment action where patentee had previously enforced the patent against other accused infringers in the forum).  In one action, the Court considered not only previous enforcement of the patents-in-suit, but also of related patents. *See ActiveVideo Networks, Inc. v. Trans Video Elec., Ltd.*, 975 F. Supp. 2d 1083, 1097 (N.D. Cal. 2013) (denying motion to dismiss, and noting that the patentee had "engaged in judicial patent enforcement (with respect to the patents at issue ***or a related patent***) in this District multiple times.") (emphasis added).

PMC's prior Delaware actions are related to the present suit because they raise identical issues regarding closely related and deeply intertwined patents.  Not only are the patents themselves closely related, but all three actions raise the same claims under § 101, and all three actions raise the same questions of unenforceability due to prosecution laches, questions which turn in large part on the same facts.  This unenforceability defense was first asserted in the Philips action.  (Philips Action, D.I. 265).  There, the defendants filed, briefed, and argued a motion for summary judgment of unenforceability due to prosecution laches.  (*See id.*, D.I. 265, 266, 282, 290, 424).  They asserted that PMC intended, in 1981, to extend the monopoly on its inventions by delaying prosecution at the patent office.  (Exh. 7 (Philips Action, D.I. 424) at 61:15-20).  They alleged that the inventors were in possession, in 1981, of all of the inventions that were claimed in the hundreds of applications filed in 1995, but withheld them specifically so that they could extend their patent monopoly by, in the

patentee's view, as long as "30 to 50 years." (*Id.* at 54:5-55:4). The case was dismissed by stipulation before the issue could be decided on the merits.

This prosecution laches defense was asserted once again in the Amazon action. (*See* Amazon Action, D.I. 11 at 9). There, the defendants asserted that "PMC willfully and intentionally postponed obtaining its patent rights by causing unreasonable and unexplained delays during the prosecution of the Patents-In-Suit before the United States Patent and Trademark Office," and that "PMC's delays . . . harmed the public by postponing the public's right to use the subject matter disclosed and claimed in the [patents]." (*Id.* at 9-10). Once again, the case was dismissed before the issue could be decided on the merits, in that instance because the claims were found not patent eligible under § 101.

Funai now seeks a declaratory judgment on the same grounds of prosecution laches, exactly the issue addressed in the previous two cases, as well as the same § 101 grounds presented in the Amazon action.[8] (*See* D.I. 1 at ¶¶ 31-46). Funai alleges in its complaint that "PMC willfully and intentionally postponed obtaining its patent rights by causing unreasonable and unexplained delays during the prosecution of the Patents-In-Suit before the United States Patent and Trademark Office." (*Id.* at ¶ 31). At trial in this action, Funai expects to present, *inter alia,* the same prosecution laches issues that were briefed and argued, though never finally adjudicated, in the Philips Action, and

---

[8]    Specifically, as described above, all of the patents-in-suit were subject to PMC's tactic of pursuing extremely broad and vague patents in order to cover new technologies and the greatest possible portion of the market as they grew during prosecution. As a result, they consist entirely of abstract claims, which Funai contends are not eligible for patenting under 35 U.S.C. § 101. The same issue was addressed by the Court, albeit with regard to different claims, in the Amazon Action. (*See* Amazon Action, D.I. 148). This provides another basis on which subject matter of the actions is related.

which were presented as an affirmative defense in the Amazon Action.[9]  The patents-in-suit in this action claim priority to every one of the patents at issue in the Philips Action, and the circumstances of their filing are identical to the patents in the Amazon Action.  The patents-in-suit are therefore unenforceable on the same grounds, and PMC cannot plausibly argue that the actions are not "related."

Finally, as discussed above, PMC has itself argued in opposing a motion to transfer that these litigations involving the same prosecution laches defense—i.e., the same defense asserted by Funai and the defendants in each of PMC's earlier forays into Delaware—are "subject matter related." (Exh. 4 at 13:19-22).  This kind of "subject matter" relation is exactly what the Federal Circuit addressed in *Avocent*, which held that the issue of "unenforceability" of a patent was "central to enforcement," and that the issue of unenforceability is part of the reason that an earlier patent action in a forum gives rise to personal jurisdiction over a later action.  *Avocent*, 552 F.3d at 1334.

**E.     It Would Be an Abuse of Discretion for the Court to Refuse to Exercise Jurisdiction over Funai's Claims Without a Well-Founded Reason to Do So**

Finally, PMC asks this Court to exercise its discretion to decline to assert subject matter jurisdiction under the Declaratory Judgment Act, even if personal jurisdiction exists.  (D.I. 11 at 14). The Federal Circuit has held that "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action.  Absent such reasons, precedent establishes that when there has been a direct charge of infringement by the patentee, and an actual controversy exists due to ongoing activity that has been accused of infringement, the accused infringer has the right to resolve the dispute."  *AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 981 (Fed. Cir. 2013) (quoting *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004), *as amended on reh'g in*

---

[9]   Funai may also present additional grounds in support of its prosecution laches defense.

*part*, (Dec. 12, 2013).  In its brief, PMC does not dispute that subject matter jurisdiction exists, or that there has been a charge of infringement by PMC against Funai and that an actual controversy exists.  In fact, PMC offers no reasons whatsoever, in its brief, for the Court to decline to exercise jurisdiction over Funai's declaratory judgment action, and Funai submits that there are none.  Absent such a circumstance, it would be an abuse of discretion for the Court to decline to exercise jurisdiction over this action.

## Conclusion

For these reasons, Funai respectfully requests that the Court deny PMC's Motion to Dismiss.

|  |  |
|---|---|
|  | */s/ Andrew E. Russell* |
|  | John W. Shaw (No. 3362) |
|  | Jeffrey T. Castellano (No. 4837) |
|  | Andrew E. Russell (No. 5382) |
| OF COUNSEL: | 300 Delaware Avenue, Suite 1120 |
| Marc R. Labgold, Ph.D. | SHAW KELLER LLP |
| NAGASHIMA & HASHIMOTO | Wilmington, DE 19801 |
| 12005 Sunrise Valley Drive, Suite 203 | (302) 298-0700 |
| Reston, VA 20191 | jshaw@shawkeller.com |
| (703) 901-8860 | jcastellano@shawkeller.com |
|  | arussell@shawkeller.com |
|  | *Attorneys for Plaintiff* |
| Dated:  October 13, 2015 |  |